# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL HUFFMAN, individually and on behalf of all class members,<br><br>Plaintiff,<br><br>v.<br><br>GRANITE SERVICES INTERNATIONAL, INC., and FIELDCORE SERVICE SOLUTIONS, LLC,<br><br>Defendants. | No. 4:21-CV-01184<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

### MARCH 17, 2022

Michael Huffman filed this putative class action against Granite Services International, Inc. and FieldCore Services Solutions, LLC in the Court of Common Pleas of Potter County, Pennsylvania, alleging that GSI and FieldCore failed to pay their employees overtime for the past three years. Around 100 days after Huffman served the Complaint, the Defendants removed the case to federal court, asserting jurisdiction under the Class Action Fairness Act ("CAFA"). Huffman now asks the Court to remand this case to the Court of Common Pleas, arguing that the Defendants' Notice of Removal was untimely and failed to establish subject matter jurisdiction.

On this, Huffman is both wrong and (potentially) right. Consistent with the United States Courts of Appeals' application of 28 U.S.C. § 1446, the Defendants' removal notice was timely; however, it is unclear whether the Defendants can satisfy CAFA's jurisdictional requirements. Accordingly, the case will remain in federal court—at least for now.

## I.    BACKGROUND

On March 1, 2021, Huffman filed the Original Class Action Complaint against GSI and FieldCore in the Potter County Court of Common Pleas.[1] He brought the case "on behalf of himself and all other similarly situated workers who were paid straight time for overtime" and "did not receive overtime for hours worked in excess of 40 in a workweek."[2] Huffman asserts that this class definition includes only employees compensated under the Defendants' "Retainer B" pay plan, which grants workers "premium pay if they work more than 40 hours in a week."[3] The Defendants contend that the class should be construed more broadly, to include both Retainer B employees as well as employees compensated under the "Retainer V1" pay plan, a "separate and distinct" plan that includes a threshold billable hours requirement.[4]

---

[1]   Doc. 1-1, Ex. A (Court of Common Pleas Complaint).
[2]   *Id*. ¶¶ 16–17.
[3]   Doc. 28 at 4 (citing Doc. 25 at 6).
[4]   Doc. 25 at 7.

The Complaint provides that "[t]here are at least 100 similarly situated Class Members who have been denied overtime pay during the relevant time period."[5] It does not, however, allege the amount in controversy—that is, the damages putative class members believe they deserve based on their allegedly unpaid overtime hours.[6]

Huffman served FieldCore with the Complaint on March 17, 2021, though the Complaint was not accompanied by a Notice to Defend.[7] Huffman did not serve GSI at this time.[8] Because FieldCore did not receive the Notice to Defend, it declined to file a responsive pleading.[9] Huffman then served FieldCore with a Notice of Intention for Entry of Judgement by Default on June 15, 2021.[10] Huffman still had not attempted or effectuated service on GSI.[11]

On June 21, 2021, the parties stipulated and agreed that Huffman would withdraw its Notice of Intention for Entry of Judgment by Default and the Defendants would instead treat the Default Judgment Notice as a Notice to

---

[5]   *Id*. ¶ 83.

[6]   *See* Doc. 14 at 6 (Huffman acknowledges that this "Complaint does not allege an amount in controversy that exceeds $5 million").

[7]   *See* Doc. 1-1, Ex. A (Court of Common Pleas Complaint).

[8]   Doc. 1 ¶ 4; *see also* Doc. 25 at 11–12 ("[Huffman] never served [GSI] with the complaint. Nor could he have, given that [GSI] no longer exists. . . . In 2017, [GSI] converted to non-party FieldCore Service Solutions International LLC, which is separate and distinct from Defendant FieldCore Solutions, LLC.").

[9]   Doc. 1 ¶ 4.

[10]   Doc. 1-2, Ex. B (Notice of Intention for Entry of Judgment by Default).

[11]   Doc. 1 ¶ 4.

Defend.[12] Additionally, both Defendants agreed to accept service of the Complaint and Notice to Defend effective June 15, 2021.[13]

The Defendants then sought to remove the action to this Court on July 6, 2021—21 days after they accepted service of the Complaint, but more than 100 days after Huffman first served FieldCore.[14] In their Notice of Removal, the Defendants assert that this Court "has original jurisdiction over this action, and the action may be removed to this Court, under [CAFA]."[15] Specifically, FieldCore reviewed its pay and location data from March 1, 2018 to June 26, 2020 and identified 197 potential class members with potential damages in excess of $8 million.[16]

On August 5, 2021, Huffman filed a Notice to Remand the case to the Potter County Court of Common Pleas.[17] That motion has been fully briefed and is now ripe for disposition.[18]

## II.   LAW

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be

---

[12]   Doc. 1-3, Ex. C (Agreement Pursuant to Rule 237.2 to Extend Time to Plead Following Ten-Day Notice).
[13]   *Id.*
[14]   Doc. 1.
[15]   *Id.* ¶ 11 (citing Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28)).
[16]   Doc. 25 at 15 (citing Doc. 25-2, Ex. A (FieldCore Pay and Location Data)).
[17]   Doc. 13.
[18]   *See* Doc. 14; Doc. 25; Doc. 28.

removed by the defendant or the defendants." However, if before the entry of final judgment, it appears that the district court lacks subject matter jurisdiction over the matter, that case must be remanded to the state court.[19] When faced with a motion for remand, "the party asserting federal jurisdiction . . . bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court,"[20] and "any doubt about the right of removal requires resolution in favor of remand."[21]

## III.   ANALYSIS

In his request to remand the case to the Potter County Court of Common Pleas, Huffman focuses on two issues: (a) the timeliness of the Defendants' Notice of Removal, and (b) whether the Defendants met their burden of demonstrating that the Court has subject matter jurisdiction over the action.[22] The Court addresses each issue in turn.

### A.   Timeliness of Removal

Huffman first argues that the Defendants' removal is untimely because it was not filed within 30 days of service.[23] According to Huffman, he served the Defendants with the Complaint on March 17, 2021, but the Defendants did not file

---

[19] 28 U.S.C. § 1447(c).
[20] *Federico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).
[21] *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).
[22] Doc. 14.
[23] *Id*. at 4.

their Notice of Removal until July 6, 2021—more than 100 days later.[24] The

Defendants disagree, asserting that the Notice of Removal is timely for several

separate reasons.[25] Relevant here, the Defendants note that the Complaint does not

specify, or set forth facts sufficient to establish, the anticipated amount in

controversy—a CAFA requirement for subject matter jurisdiction.[26]

     For a case to be removed from state to federal court, a defendant must file a

notice of removal "within 30 days after the receipt by the defendant, through

service or otherwise, of a copy of the initial pleading setting forth the claim for

relief."[27] That said, "in CAFA cases, the thirty-day clocks of § 1446(b) begin to

run only when the defendant receives a document from the plaintiff from which the

defendant can unambiguously ascertain CAFA jurisdiction."[28] Accordingly, the

United States Courts of Appeals that have addressed this issue uniformly hold that

"[d]efendants are permitted to remove outside of [the 30-day] periods when the

---

[24]  *Id*. at 4–5 (citing Doc. 14, Ex. 1).

[25]  Doc. 25 at 10–14.

[26]  *Id*. at 13–14.

[27]  28 U.S.C. § 1446(b)(1).

[28]  *Graiser v. Visionworks of America, Inc.*, 819 F.3d 277, 285 (6th Cir. 2016) (emphasis omitted); *see also Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137, 145–46 (2d Cir. 2014) ("Section 1446(b) imposes a time limit *only* in cases in which the plaintiff's initial pleading or subsequent document has explicitly demonstrated removability."); *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 (5th Cir. 2014) ("[T]he thirty-day clock is not triggered unless the initial pleading affirmatively reveals on its face that the plaintiff's sought damages exceeding the jurisdictional amount.") (internal quotation marks and citation omitted); *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 76 (1st Cir. 2014) ("To determine whether Section 1446(b) clocks have begun to run, therefore, we focus exclusively on the pleadings and other papers provided by the plaintiffs. The defendant must remove within thirty days of a paper, filed by the plaintiffs, that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5 million can be readily ascertained.").

time limits of 28 U.S.C. § 1446(b) are not triggered" and it is instead "a defendant's own investigation [that] yields evidence of removability."[29]

Here, the Complaint Huffman filed in Court of Common Pleas does not specify the damages sought or contain allegations from which the total amount in controversy can be readily determined.[30] As such, service of the Complaint in March 2021 did not trigger the 30-day deadline imposed by § 1446(b).[31]

To the Court's knowledge, the only attempt to quantify the total amount in controversy is the Defendants' independent investigation into FieldCore's pay and location data.[32] Through this investigation, the Defendants concluded that that the amount in controversy exceeds $5 million and therefore decided to remove the action to federal court.[33] Regardless of whether the Defendants' conclusion is

---

[29]  *Cutrone*, 749 F.3d at 147; *see also Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 239 (7th Cir. 2021) ("[I]f a defendant independently discovers that the case is removable under the terms of the Class Action Fairness Act, it may remove the case at whatever point it deems appropriate, regardless of whether the window for removal on another basis already opened and closed."); *Graiser*, 819 F.3d at 286 ("Outside of § 1446(b)(3)'s thirty-day window, [the defendant] was free to conduct its own investigation and remove the case. [The Defendant] did so here, and its notice of removal"—filed nearly seven months after the plaintiff filed the amended complaint—"was timely.") (internal citation omitted); *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (holding that "§§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines").

[30]  *See* Doc. 1, Ex. A; *see also* Doc. 14 at 6 (Huffman acknowledges that his "Complaint does not allege an amount in controversy that exceeds $5 million").

[31]  *See*, *e.g.*, *Cutrone*, 749 F.3d at 145–47.

[32]  *See* Doc. 25-2, Ex. A (FieldCore Pay and Location Data).

[33]  Doc. 25 at 14.

correct, this sequence of events accords with the removal procedure prescribed by the United States Courts of Appeals that have addressed this issue.[34]

Because the Complaint did not contain the information needed to trigger § 1446(b)'s 30-day deadline, the Defendants' Notice of Removal—which they filed after conducting an independent investigation into the amount in controversy—is timely.[35]

### B.    Subject Matter Jurisdiction

Next, Huffman argues that the case should be remanded to state court because this Court does not have subject matter jurisdiction under CAFA.[36] Specifically, Huffman asserts that the Defendants failed to show by a preponderance of the evidence that class size exceeds 100 and the plausible amount in controversy exceeds $5 million.[37] But the Court currently lacks the evidence needed to resolve this issue, and, as such, it will reserve judgment pending the results of jurisdictional discovery.

---

[34]    *See Cutrone*, 749 F.3d at 147; *Railey*, 16 F.4th at 239; *Graiser*, 819 F.3d at 286; *Roth*, 720 F.3d at 1125.

[35]    The Defendants raise two additional arguments for why the Notice of Removal is timely: (1) "when multiple defendants are served at different times, each defendant has its own removal clock, and CAFA only requires a single defendant to effectuate removal, which [GSI] satisfied in this case"; and (2) "service upon FieldCore was not complete until June 15, 2021, and removal as to FieldCore was thus timely as well." Doc. 25 at 10–11. Huffman disputes both. Doc. 28 at 2–4. Because the Court finds the removal notice timely under § 1446(b) due to the absence of allegations in the Complaint sufficient to establish federal jurisdiction, it need not resolve the factual disputes underlying these alternative bases for the Notice's timeliness.

[36]    Doc. 13 § 5.

[37]    Doc. 28 at 8–10.

As the Third Circuit explained in *Judon v. Travelers Property Casualty Co. of America*, "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consists of at least 100 or more members."[38] Courts assess whether these CAFA jurisdictional requirements are satisfied by "evaluat[ing] allegations in the complaint and a defendant's notice of removal."[39] When, as here, "there are contested facts related to jurisdiction," the party alleging jurisdiction "must justify his allegations by a preponderance of the evidence."[40]

Generally, when parties dispute facts necessary to establish jurisdiction, district courts allow jurisdictional discovery unless the claim is "clearly frivolous."[41] Jurisdictional discovery is particularly appropriate when considering CAFA jurisdiction, as courts often "have no way of estimating the total amount in

---

[38] 773 F.3d 495, 501 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6); *Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 590 (2013)).

[39] *Id.*

[40] *Id.* at 501, 503 (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)).

[41] *Lasala v. Marfin Popular Bank Public CO., Ltd.*, 410 F. App'x 474, 478 (3d Cir. 2011); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (internal citation omitted); *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 111 (3d Cir. 2015) ("If defendants mount a factual challenge to jurisdiction on remand, however, the District Court must permit jurisdictional discovery in order to ascertain whether complete diversity exists.").

controversy in relation to CAFA's [$5 million] jurisdictional threshold" absent facts specific to the individual class members.[42]

Here, the Defendants compiled FieldCore pay and location data to determine the size of the class and the amount in controversy, and concluded that both satisfied the requirements for CAFA jurisdiction. First, the Defendants defined the contours of the prospective class: Based on a review of separate class action lawsuits brought against the Defendants by plaintiffs represented by Huffman's attorneys, the Defendants contend that Huffman's "broad 'straight time for overtime' proposed class" includes "both Retainer B and Retainer V1 employees."[43] Second, the Defendants examined the FieldCore pay and location data from March 1, 2018 to June 26, 2020 to determine the total number of Retainer B and Retainer V1 employees from this period.[44] They identified 197 potential class members with potential damages exceeding $8 million.[45] Adding another 30% for attorney's fees, the Defendants estimate the total amount in controversy as more than $10 million—double the CAFA threshold.[46] Further, the Defendants note that this estimation understates the class size and amount in

---

[42] *Ciccone v. Progressive Specialty Insurance Co.*, 2020 WL 7319777, *6 (M.D. Pa. 2020) (Connor, J.); *see also id.* ("Although [the defendant] has not presently proven that jurisdiction is proper under CAFA, we will defer a final ruling on this issue and will allow a brief period of time for jurisdictional discovery.").

[43] Doc. 25 at 7.

[44] 25-2, Ex. A (FieldCore Pay and Location Data)).

[45] Doc. 25 at 15 (citing Doc. 25-2, Ex. A (FieldCore Pay and Location Data)).

[46] *Id.*

controversy, as "FieldCore has not yet been able to examine data from June 27, 2020 to the present."[47]

But the Defendants mischaracterize the class at issue. In the Complaint, Huffman limits the proposed class "to workers paid straight time for overtime pursuant to FieldCore's Retainer B pay plan"; the Complaint makes no mention of the Retainer V1 plan.[48] As the Defendants explain, "the Retainer B and Retainer V1 plans are separate and distinct": employees paid under the Retainer B plan "receive premium pay if they work more than 40 hours in a week," whereas the Retainer V1 pay plan includes a 1,500 billable hours requirement.[49] According to Huffman, he did not "inadvertently omit" any reference to the Retain V1 plan; rather, "Huffman purposely limited his proposed class to workers paid pursuant to FieldCore's Retainer B/straight time for overtime pay plan."[50]

The Defendants argue that Huffman's decision to limit the prospective class to only employees paid under the Retainer B plan is improper, citing the United States Court of Appeals for the Second Circuit's decision in *F5 Capital v. Pappas* for the proposition that "CAFA was clearly designed to prevent plaintiffs from

---

[47]  *Id*. at 8.
[48]  Doc. 28 at 4 (citing Doc. 1 ¶¶ 4–6, 13, 15–18, 33, 43–44, 49–50, 53, 58, 60–62, 75–76, 79, 81).
[49]  Doc. 25 at 6–7.
[50]  Doc. 28 at 7.

artificially structuring their suits to *avoid* federal jurisdiction."[51] But that proposition does not support the ruling the Defendants' request.

In *F5 Capital*, the Second Circuit considered whether jurisdiction over state law claims derivative of a CAFA claim was proper when the CAFA claim (i.e., "the jurisdictional anchor") was dismissed.[52] The Second Circuit did not address a class action plaintiff's right to define the contours of the putative class he seeks to represent. In *Freeman v. Blue Ridge Paper Products, Inc.*—the case the Second Circuit cited in *F5 Capital*—the United States Court of Appeals for the Sixth Circuit considered whether a class action plaintiff could evade federal jurisdiction by amending its complaint after removal to narrow the class period (and therefore bring the amount in controversy below the $5 million threshold) only to then file separate, related class action suits that collectively covered the remainder of the initial class period.[53] Unsurprisingly, the Sixth Circuit held such legal gamesmanship impermissible.[54]

Neither *F5 Capital* nor *Freeman* require a plaintiff to expand the putative class to include a separate category of employees that the defendant admits are "distinct."[55] Indeed, because "the plaintiff is the master of the complaint," a

---

[51]  856 F.3d 61, 81 (2d Cir. 2017) (citing *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 407 (6th Cir. 2008).

[52]  *Id*. at 76–82.

[53]  551 F.3d at 407.

[54]  *Id*. at 408 (holding that courts should not read CAFA "to permit the splintering of lawsuits solely to avoid federal jurisdiction in the fashion done in this case").

[55]  Doc. 25 at 7.

defendant cannot unilaterally expand the scope of the putative class to satisfy CAFA's jurisdictional thresholds, "thereby selecting the forum in which the claim shall be litigated."[56]

Because the prospective class includes only employees paid under the Retainer B plan, the FieldCore pay and location data does not establish either the required class size or amount in controversy. Looking at this narrower pool of FieldCore data, Huffman identifies just 63 potential class members with $1,687,117.50 in possible damages.[57] Huffman adds to that attorney's fees based on the Defendants' proposed calculation for an estimated total amount in controversy of $2,193,252.75—less than half the amount required for CAFA jurisdiction.[58]

That said, the data presented does not cover the entirely of the class period— specifically, it does not include FieldCore pay and location data from June 27, 2020 to the present.[59] Therefore, the Defendants' estimates for the class size and amount in controversy likely understate the actual numbers. Beyond pure speculation, the Court has no way of knowing either the number of employees paid under the Retainer B plan from June 27, 2020 to the present or the additional amount in controversy based on the hours these employees worked.

---

[56] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).
[57] Doc. 28 at 8 (citing Doc. 25-2, Ex. A (FieldCore Pay and Location Data)).
[58] *Id*. at 8–9.
[59] Doc. 25 at 8.

## IV.    CONCLUSION

Although the Defendants bear the burden of establishing subject matter jurisdiction and, as of now, they have failed to do so, determining the putative class size and damages requires additional jurisdictional facts—that is, further evidence from FieldCore. Accordingly, the Court will defer a final ruling on Huffman's Motion to Remand and allow a brief period for jurisdictional discovery.[60]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[60]   *See Ciccone*, 2020 WL 7319777 at *6.